**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelvin Williams, | No. CV 12-00068-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kelvin Williams seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

   **A.     Factual Background**

Williams was born in May 1963.  He has at least a high school education and previously worked as a warehouse worker, ramp agent, and audio/video equipment installer.  In August 2008, Williams fell while working as a custodian and suffered a

shoulder injury and a closed head injury.  He subsequently reported and was treated for memory problems, headaches, and other symptoms that improved in the fall of 2010.

### B. Procedural History

On June 16, 2009, Williams protectively applied for disability insurance benefits and supplemental security income, alleging disability since October 8, 2008.  On May 12, 2011, he appeared with his attorney and testified at a hearing before the ALJ.  An independent and impartial vocational expert and two independent and impartial medical experts also testified.  At the hearing, Williams moved to amend his application to a closed period from October 8, 2008, through November 1, 2010.

On June 2, 2011, the ALJ issued a decision that Williams was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Williams' request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  On January 11, 2012, Williams sought review by this Court.

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for

1 further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.
2 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further
3 proceedings is appropriate if enhancement of the record would be useful." *Benecke v.*
4 *Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been
5 developed fully and further administrative proceedings would serve no useful purpose,
6 the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*,
7 80 F.3d at 1292).

8 The ALJ is responsible for resolving conflicts in medical testimony, determining
9 credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
10 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for
11 drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*
12 *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Issues Presented for Review

14 Williams has identified two issues for review: (1) whether the ALJ misinterpreted
15 evidence (*i.e.*, medical source opinions) to the detriment of the claimant and (2) whether
16 the ALJ rejected the opinion of a treating source (*i.e.*, a psychiatric nurse at Southwest
17 Behavioral Health) inappropriately. He does not claim disability from physical
18 limitations, only "disability from a psychological perspective."

### IV. Analysis

20 The two issues Williams has identified for appeal challenge how the ALJ
21 interpreted and weighed medical source evidence.

#### A. Legal Standard for Weighing Medical Source Evidence

23 In weighing medical source opinions in Social Security cases, the Ninth Circuit
24 distinguishes among three types of physicians: (1) treating physicians, who actually treat
25 the claimant; (2) examining physicians, who examine but do not treat the claimant; and
26 (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v.*
27 *Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the
28 opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A

1 treating physician's opinion is afforded great weight because such physicians are
2 "employed to cure and [have] a greater opportunity to observe and know the patient as an
3 individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating
4 physician's opinion is not contradicted by another physician, it may be rejected only for
5 "clear and convincing" reasons, and where it is contradicted, it may not be rejected
6 without "specific and legitimate reasons" supported by substantial evidence in the record.
7 *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating
8 physician's subjective judgments in addition to his clinical findings and interpretation of
9 test results. *Id.* at 832-33.

10 Further, an examining physician's opinion generally must be given greater weight
11 than that of a non-examining physician. *Id.* at 830. As with a treating physician, there
12 must be clear and convincing reasons for rejecting the uncontradicted opinion of an
13 examining physician, and specific and legitimate reasons, supported by substantial
14 evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at
15 830-31.

16 The opinion of a non-examining physician is not itself substantial evidence that
17 justifies the rejection of the opinion of either a treating physician or an examining
18 physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may
19 also serve as substantial evidence when the opinions are consistent with independent
20 clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that
21 an ALJ may consider when evaluating any medical opinion include "the amount of
22 relevant evidence that supports the opinion and the quality of the explanation provided;
23 the consistency of the medical opinion with the record as a whole; [and] the specialty of
24 the physician providing the opinion." *Orn*, 495 F.3d at 631.

25 Moreover, Social Security Rules expressly require a treating source's opinion on
26 an issue of a claimant's impairment be given *controlling* weight if it is well-supported by
27 medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent
28 with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a

1  treating source's opinion is not given controlling weight, the weight that it will be given is
2  determined by length of the treatment relationship, frequency of examination, nature and
3  extent of the treatment relationship, relevant evidence supporting the opinion, consistency
4  with the record as a whole, the source's specialization, and other factors. *Id.*
5  Finding that a treating physician's opinion is not entitled to controlling weight
6  does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p).  Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### B. The ALJ Did Not Err in Interpreting or Weighing Medical Source Evidence.

#### 1. The ALJ's Evidentiary Findings

Williams contends that the ALJ erred by misinterpreting evidence from Dr. Steven Savlov, Dr. Valerie Kemper, Dr. Michael Rabara, and Dr. Edward Jasinski.

##### a. Dr. Savlov, Examining Neuropsychologist

The ALJ summarized the assessment completed by Dr. Savlov as follows:

> Steven Savlov, Ph.D. completed a neuropsychological assessment in April 2009. Dr. Savlov indicated the claimant's results of a client effort test most likely represented a significant underestimation of his current cognitive abilities, and as such, should be treated with extreme caution. Dr. Savlov stated that in terms of assessing the claimant's cognitive complaints, his assessment was particularly unrevealing in that the claimant did not put forth adequate effort for him to assess the claimant's cognitive strengths and relative weaknesses. Dr. Savlov did not give a primary diagnosis of the claimant (Exhibit 4).

- 5 -

1  Williams contends that the ALJ erred by concluding that Dr. Savlov did not give a
2  primary diagnosis and that in fact he stated diagnoses in November 2008 and June 2009.
3  However, the ALJ correctly stated that Dr. Savlov did not give a primary diagnosis in
4  Exhibit 4 cited by the ALJ, which is the April 2009 "In-Depth Neurological and
5  Behavioral Medicine Consultation Assessment."

6  During the April 2009 assessment, prior to cognitive testing, Williams completed a
7  test of client effort, which he failed. Dr. Savlov observed that Williams' results "most
8  likely represent a significant underestimation of his current cognitive abilities, and, as
9  such, should be interpreted with extreme caution." Under the heading "Clinical and
10 Diagnostic Impressions," Dr. Savlov stated, in part, in bold:

> In terms of assessing the patient's cognitive complaints, this assessment was particularly unrevealing in that the patient did not put forth adequate effort for this provider to assess his cognitive strengths and relative[] weaknesses. . . . Although this may be due to a variety of reasons (one of them which may be the financial incentive for disability) it is clear that the patient may also be having significant psychiatric distress, including (but not limited to) depression, anxiety, or psychosis. Unfortunately, this provider is unable to speak to the patient's current level of cognitive status.

Dr. Savlov hypothesized that Williams was depressed, but overemphasized his level of depression.

In November 2008, Dr. Savlov made some initial diagnoses that he said would be barriers to his return to his regular duties at the time, but recommended treatment and further evaluation. In June 2009, Dr. Savlov met with Williams to review the results of the April 2009 assessment. In his report regarding that office visit, Dr. Savlov stated that Williams had a schizoaffective disorder with delusional psychotic symptomalogy with paranoid features and dementia due to schizoaffective disorder with paranoid and delusional symptoms. The report also states that Williams "could have a psychiatric problem" and needs neuropsychological testing. It includes a number of recommendations for Williams, including lifestyle management strategies and getting back on his medication for schizophrenia and mood disorders.

**b.     Dr. Kemper, Examining Psychologist**

Williams contends the ALJ erred in interpreting the evidence because he said he gave Dr. Kemper's opinion great weight but did not accept her Global Assessment of Functioning score of 40, which indicates an inability to sustain work. However, the ALJ did not state that he gave Dr. Kemper's opinion controlling weight, and he expressly gave great weight to her opinion that Williams' test results were invalid due to his lack of effort. Dr. Kemper stated:

> This evaluation appears to represent a questionable assessment of Mr. Williams' current psychological functioning as his results on the comprehensive testing were diverse. Also, on memory tests, Mr. Williams displayed a higher than expected rate of forgetting, given his immediate memory performance.
>
> . . . .
>
> Mr. Williams demonstrates significant impairment in multiple areas of functioning that compromise his ability to gain and/or retain employment; however, it is questionable as to whether he provided his best effort consistently. Therefore, it is uncertain as to whether he is entirely precluded from seeking gainful employment and it is difficult to assess his actual level of impairment and work capabilities.

### c.   Dr. Rabara, Examining Psychologist

Dr. Rabara concluded:

> [M]any of his reported symptoms were vague and not entirely plausible. He was clearly putting forth a poor effort during the testing and his current scores are not considered valid. Overall, considering the fact that he was gainfully employed prior to his injury, records refer to essentially normal neurological imaging findings, and current test results show poor effort, it is the opinion of this examiner that he is exaggerating his deficits for the secondary gain of financial benefit from disability benefits and should he choose to put forth the effort, he seems capable of more than he reports.

Williams contends that the ALJ erred by giving great weight to Dr. Rabara's opinion because "Dr. Rabara's opinion of no 12 months impairment seems to be totally contrary to the evidence of record." However, the ALJ correctly stated that Dr. Rabara's opinion was supported by the other medical opinions that Williams' test results were invalid due to his lack of effort.

### d.   Dr. Jasinski, Psychological Expert

Having reviewed all the medical evidence of record, Dr. Jasinski testified at the administrative hearing that anyone who had done an objective assessment of Williams

- 7 -

1  had concluded that Williams was malingering or exaggerating symptoms.  His overall
2  opinion was that Williams did not have any limitations affecting his ability to work
3  because of the possibility of malingering.  Williams contends that the ALJ erred by giving
4  great weight to Dr. Jasinski's opinion because his testimony was inconsistent and because
5  Dr. Jasinski stated there had been a diagnosis of malingering when no such diagnosis had
6  been made.  It is true that the record does not show that any medical provider reached a
7  final diagnosis of malingering, but many said malingering needed to be ruled out and/or
8  another diagnosis could not be reached because Williams' lack of effort and exaggeration
9  of symptoms invalidated the assessments.  The record demonstrates that Williams'
10 participation in assessments lacked credibility.  Thus, Dr. Jasinski's opinion is consistent
11 with the evidence of record.
12     Therefore, the ALJ did not err by misinterpreting evidence from Dr. Steven
13 Savlov, Dr. Valerie Kemper, Dr. Michael Rabara, and Dr. Edward Jasinski.

### 2. Psychiatric Nurse Practitioner at Southwest Behavioral Health

15     Williams contends that the ALJ erred by rejecting the December 2009 opinion of
16 the psychiatric nurse practitioner, Sharon Lorraine Paul, Doctor of Nursing Practice, at
17 Southwest Behavioral Health.  Evidence from nurse practitioners may be considered to
18 show the severity of a claimant's impairment and how it affects his ability to work, but
19 may be discounted if the ALJ states "reasons germane to each witness for doing so."  *See*
20 20 C.F.R. § 404.1513(a), (d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
21     Williams began treatment at Southwest Behavioral Health in July 2009.  In
22 December 2009, Dr. Paul assessed Williams as having extreme limitations ("no useful
23 ability to function") in his ability to carry out short, simple instructions; make judgments
24 on simple work-related decisions; interact appropriately with the public; interact
25 appropriately with supervisors; interact appropriately with co-workers; and respond
26 appropriately to work pressures in a usual work setting.  She assessed him as having
27 marked limitations ("severely limited") in his ability to understand and remember short,
28 simple instructions; understand and remember detailed instructions; and respond

- 8 -

1  appropriately to changes in a routine work setting.  Dr. Paul reported that her assessment
2  was supported by her findings of psychotic symptoms, mood instability, and paranoid
3  ideation and opined that Williams' condition was likely chronic and lifelong.
4       In April 2011, DNP Paul assessed his limitations as "none" or "slight," except that
5  his ability to respond appropriately to work pressures in a usual work setting was
6  "moderate."  She commented that Williams' mood disorder was cyclic in nature, and
7  when his mood was stable, his responses were within normal limits.  She opined,
8  however, that he had "potential to become unstable and psychotic without medication, at
9  which time he is not able to function appropriately in any social settings."
10      The ALJ's hearing decision stated:

> The opinion of Sharon Paul, DNP, is given little weight as she opined in December 2009 that the claimant is disabled and his mental impairments were chronic and lifelong and then in April 2011, she opined that when the claimant is on his medication, he responds appropriately [].  Not only does she give[] conflicting opinions, but other professional medical sources throughout the record conflict with her opinion, such as the opinions of Dr. Kemper and Dr. Rabara, as well as the mental health medical expert, Dr. Jasinski.  Her professional qualifications are simply not on par with those of the other medical experts.  In addition, the claimant had a global assessment functioning equal to 65, which indicates only some difficulty in social, occupational, or school functioning and conflicts with Sharon Paul's opinion that the claimant is disabled [].  Also, the determination concerning whether or not the claimant is disabled is reserved for the Commissioner.

18  Thus, the ALJ has provided reasons germane to DNP Paul for discounting her assessment
19  of Williams.
20      IT IS THEREFORE ORDERED that the final decision of the Commissioner of
21  Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall
22  terminate this case.
23      DATED this 6th day of September, 2012.

_____
Neil V. Wake
United States District Judge